Good morning, Your Honors, and may it please the Court. Todd Borden from the Federal Public Defender's Office, appearing on behalf of the appellant, David Depape. Judge Bumate, I'm going to try to reserve four minutes for rebuttal and I'll make sure to watch the clock. After Mr. Depape broke into the Pelosi residence and struck Paul Pelosi, he was charged with numerous state crimes for which he ultimately received a life sentence. But the basis for federal jurisdiction was an elevated mens rea element as to both charged offenses, whether he had specific intent to kidnap then-Speaker Nancy Pelosi on the account of the performance of her official duties as a member of Congress, and whether the same motivation prompted his attack on her husband. Now, as to that critical element, the district court refused to instruct the jury as to what, on account of the performance of official duties, meant, even though Mr. Depape's instruction, proposed jury instruction, validly defined that element. This instructional error requires reversal, and I'd like to talk about that first. So the Constitution guarantees the right to present a defense, and this Court has held that that entails the right to receive a theory of the defense instruction if three criteria are met. I don't think the first two are really in dispute, that the instruction is supported by law. I don't think the government is really seriously arguing the ultimate instruction we proposed was not supported by law. Second, it has to have some foundation in evidence. And here, the entire defense strategy was to focus narrowly on this mens rea element, and there is indeed a lot in the record, as my brief articulates, showing that Mr. Depape had a lot of beliefs that were really unrelated to anything having to do with Speaker Pelosi's duties as a congressperson. So that leaves the third requirement, which is whether any other jury instructions adequately discovered the defense theory, and in the context of this case, the answer is no. But I see a question.  I mean, for me, the — I mean, your proposed jury instruction, as I understand it, changes on account of to because of, right? Isn't that the sum total of the jury instruction? No, Your Honor. It does two things. So it certainly does use the language of because of, on account of, and we have arguments that that is certainly clearer for leisure. Maybe, but they mean the same thing, right? They are — there certainly is legal matter similar. That's true, Your Honor. But the other critical component here is that it also defines what official duties are at stake, and that is official duties as a member of Congress. And the — What other official duties would have been at stake, given the instruction? The instruction also included a discussion of — that Speaker Pelosi was a member of Congress. So they — well, yeah, let's look at the instructions. They're at ER 109 and 110. They define Federal officer, and they say that — and they do — they use the word official duties, but again, they don't say what official duties. And, sorry, to more clearly answer your question, Judge Johnstone, the evidence in this trial indicated that Speaker Pelosi had a lot of other duties, for example, in relation to the Democratic National Committee, that she had, you know, that were purely political duties. Her — her aide spoke about House ethics rules and how that she was — you know, certain actions she did that may seem political were not, in fact, official duties. So there is an evidentiary basis here, and — But that's a — that sounds to me more like a sufficiency argument rather than an instructional argument. Well, yeah. Sorry, I slightly misspoke there, Your Honor. But the point is, the two instructions — the two substantive instructions nowhere define what official duties are. Now, maybe the jury could infer it. I think that's the government's strongest position. But I think the Court needs critically to look at the context of how that worked out in this case. And I want to point to the Mason decision in particular, which says that the — the question about whether or not other instructions specific — this third element we're talking about, whether other instructions adequately cover defense theory, it is context-dependent, and it also needs to be looked from the perspective of what a reasonable juror would understand the instructions to mean. And here — here, the critical context I would point the Court to is the prosecutor's closing argument in rebuttal, which essentially disclaimed the — the whole theory of the defense as being legally valid at all. You know, the — the first thing the prosecutor said is, the defense talked a lot about this distinction between politics and official action. This is a made-up distinction. The defendant made no such distinction. And there's nothing in your instructions that talks about a distinction between politics, whether democratic politics and fundraising politics, and official duties or action. Let's look at the instruction. On account of the performance of official duties, nowhere is that defined. The same term is used in the second instructions. Again, it's not defined. There's no reason to believe that this distinction the defense has made up has anything to do with your deliberations. So, Your Honors, I think this context is critical and that this Court's Mason decision, you know, essentially requires the Court to consider the context of the case. And what we have here is an unusual situation where the prosecutor essentially weaponizes the district court's refusal to give a clear, precise instruction of what official duties are in a single place and points to the lack of that as a basis for rejecting a legally valid defense theory. And that undermines my client's constitutional right to defend a defense. Can we take the — I guess — can we take the prosecutor's comments as — I mean, how does that fit in with instructional error? I don't think you assign any kind of separate claim or import with respect to the closing argument. So we're supposed to use that as kind of evidence that the instruction made that available to the prosecution, or how do those relate? Yeah, that's an excellent question, Your Honor. So the way they relate is when assessing instructional error, that's Mason, the Court needs to look in the overall context of how the trial took place. And we have a situation where the specific lack of an instruction there is being, you know, highlighted by one party as a basis to reject the theory. I think that's particularly problematic. I want to point — How does that work chronologically? The judge has to offer the instructions, the prosecution refers to them. But why — how would the judge take account of the context of something that hasn't happened yet? I mean, it's a fair question, Your Honor. But all I can say is that that's how the case law has looked at. I point specifically to — and I mean, I guess overall it's not uncommon that we sort of — something that might not be erroneous when it initially happened becomes erroneous — I mean, that does happen in law sometimes. I acknowledge that's a little anomalous. But I really want to point the Court to the DeVry's decision, that's the D.C. Circuit case. That involved a refusal to give a advice of counsel defense. And the prosecutor there did the exact same thing. And obviously the refusal to give the instruction to go more directly to your question, Judge Johnstone, happened before. But nevertheless, that critical fact for the D.C. Circuit was their basis for reversal. You know, they pointed to the fact that the prosecutor can, on the one hand, prevent a defense from receiving a legally valid theory of defense instruction, and then on the other hand, you know, point to the very lack of that instruction in closing argument as a basis for the jury to reject the defense theory. So, yes. So I think that's really the most critical — the critical situation here. And I'd also want to emphasize that the — you know, this Court's rule for a denial of a theory of defense instruction is a, per se, a reversible error. I don't think the harmlessness — or, sorry, I don't — you know, I don't think it really especially matters here because it was so prejudicial based off the closing argument. But I did want to emphasize that's the Court's rule. But you are allowed to argue the opposite, right? That it is limited — the official duties are only to a member of Congress. And so what's the harm? Well, so the harm here — I mean, for starters, I do want to emphasize again the context was rebuttal closing. So we obviously — and that was sort of the first time that came out. So obviously we were limited in that regard. But I also want to emphasize that, you know, this Court's decision in Mason and also the D.C. Circuit in DeVries have emphasized that just saying that the defense can argue its defense theory isn't enough, that it needs to be — that the right to present a defense also entails the right to present a theory of the defense instruction because, you know, ultimately it is, of course, the judge's duty to state the law. And saying that, you know, well, the defense can, you know, argue the law is the other way, is — you know, that's not what this Court has held. I'd like to turn to the Rule 403 argument for a moment. You know, the district court abused its discretion by omitting bloody videos and images of the aftermath of Mr. DePapp's assault, which had infinitesimal probative value and an extreme risk of unfair prejudice. I want to emphasize this is not like a homicide case where the cause of death is a critical element to the offense. Here when Mr. DePapp struck Mr. Pelosi, at that point the — all the elements of battery had been satisfied. And so, really, the district court's analysis at core boiled down to a suggestion that, you know, it was probative as to his intent, but the extent to which, you know, the aftermath of the assault was probative to intent is incredibly small. And the prejudicial value of these particular images was extreme. We point particularly to Officer Wilmes' body-worn camera footage, Exhibit 2, which showed Mr. Pelosi struggling. You know, it's quintessential evidence that sort of urged the jury to — or that would have the effect of causing the jury to base its verdict on its emotional reaction rather than, you know, the narrow legal elements that were at stake in this case, which, to be clear, it was a narrow mens rea defense. It was not, you know — so I think that's — the danger of unfair prejudice there is strong. So, counsel, are you suggesting that your client — or that Mr. DePapp was entitled to a trial free of any sort of emotional impact? I mean, this was a pretty grave case. No, certainly, Your Honor. And to be clear, our request was — we were not contesting admission of the actual assault. The only thing that we were objecting to were sort of, you know, images of him in a pool of blood, the aftermath, which was, you know, especially — especially disturbing and had less relevance. So we — of course, no, we were not trying to, you know, sanitize this beyond all recognition. But I think the impact of the additional footage that was admitted was very high. The government used that in their opening argument, showing that — this disturbing image of Mr. Pelosi in a pool of his blood. It was the first — the video was shown twice by the first witness. And during closing argument, a freeze frame of right before the impact was shown to the jury, and, you know, the prosecutor said, I'm not going to make you watch that, essentially, but, you know, we all remember what happened. So I do think that the sort of extent of Mr. Pelosi's injuries were a — were substantially highlighted and just had too much risk of unfair prejudice. And I point the Court especially to the decision in Hitt that emphasized that, you know, even when there's only a modest risk of unfair prejudice, when the probative value is so low, it simply — you know, it still — it still is an abuse of discretion. I'd like to turn, with the time I have left, to the Rule 35 allocution argument. The right to allocution has deep common law roots, and when a district court fails to afford a defendant an opportunity to allocute before sentencing, automatic reversal is required. The question here, of course, is whether Rule 35a allows the district court to do a, you know, sort of rushed do-over in 14 days. And our answer is definitely not when we look to the text of Rule 35a. Rule 35a is — it's important, I think, especially to look to the remedy provided by Rule 35a, and that is to correct a sentence. And that's a legal term of art in the Federal Rules of Criminal Procedure. Rule 43 in particular talks about the distance between a full plenary resentencing hearing and a mere action to correct a sentence. And notably, Rule 43 — under Rule 43, a defendant doesn't even have a right to be present at a proceeding to correct a sentence. So the district court sort of — I mean, it's understandable why the district court wanted to do what it did, but it's sort of jamming this particular — So why — why is it not a technical error? So, you know, Rule 32 requires allocution, correct? Yes, Your Honor. As a technical matter, it's required. So, Your Honor, it is — I guess I disagree with that assessment of technical. I mean, for starters, the importance of the right to allocution I don't think is merely technical. It's actually, you know, goes back to the 1600s. It has really deep roots. Sure, but it got constitutionalized — or, I mean, sorry, it became statutory or became a rule in Rule 32.  So as a — you know, as I look at the word technical, it means mechanical, wrote, you know, strictly required. And to me, allocution is all of those things. Well, so I disagree, Your Honor. I mean, notably, even the Fiserkes decision in Delgado, which is the only one on point, put this under the other clear error category. So I'm — but more importantly — Just explain why you think it's not technical. Yeah, yeah, yeah. I don't think it's technical because it goes to the overall broader exercise of judicial discretion. And if you look especially — I would really point the Court to the M-M decision from the Third Circuit. I think that's the most thorough discussion of sort of the scope of the rule. And there they emphasize that situations which sort of involve weighing of sentencing factors, weighing of the overall outcome, those are not situations that are amenable to correction under rule. So if it requires the exercise of discretion, you're saying it can't be technical? That's right. But, you know, if a district court makes a math error on the sentencing guidelines, right, then at resentencing, they have to recalculate the guidelines, get to the correct guidelines, and then employ discretion to impose the right sentence. Well, Judge Bumatea, I disagree with the premise of that sentence because I think if you look to the M-M decision in the Third Circuit, and also I'm — I'm failing to recall the name, but the Sixth Circuit decision I quoted in my brief, both of those were quite clear that actually a guidelines error is not under the ambit of Rule 35, really precisely for that reason, because it does require the sort of assessment of broader sentencing factors. How is that possible? I mean, it's a — if there's a simple arithmetical mistake, how can it not apply? The reason it can't apply — a lot of it goes back to the Supreme Court's decision in Dillon, which is a 3582 case, but there's a lot of discussion of Rule 35 because they're similar concepts. And in — and in Dillon, they drew — again, it goes to the remedy. They drew the distinction between merely correcting, which doesn't involve the full exercise of plenary sentencing discretion, versus a resentencing, which, again, involves the judge considering all of the statutory factors and sort of — So why not clear error, then? I mean, I assume if this wasn't objected to, it came to us, we might call it plain error, we might call it all sorts of other — other things. How is this not clear error? It's not clear error, Your Honor, because, again, it mostly goes back to — You've made it very clear to us, so I'm trying to — right, it kind of cuts both ways. How — Right. There's no other way to assess this as the district court did. So the MM — I'm sorry, Your Honor. So the MM decision does make that — the point that not — not every error that requires appellate reversal is so clear that it's amenable to correction under Rule 35. So I agree. I mean, I acknowledge there's some degree of tension there, that obviously I'm coming here today saying that you should send it back for resentencing. But again, it's not — it's limited to errors that are in the nature of purely mechanical and technical fixes. For example, failure to impose a special assessment, imposing a sentence outside the statutory maximum or minimum, nature — you know, errors of those — of those natures. And again, the MM decision cites to — Well, for example, if the district court sentenced someone to a mandatory minimum when that person is not eligible for a mandatory minimum, that's — you think that could be corrected, right, under Rule 35? It would depend — I'm not sure it would, Your Honor. It would depend if the — It's an illegal sentence, right? It — but whether or not Rule 35 is the correct mechanism to correct that, I'm not sure about, Your Honor, because the nature of Rule 35 corrections are they have to be essentially an automatic — What's the other method for a correction, then? I mean, direct appeal, which is — So you have to appeal and come back, and then we have to remand? Yeah. So I — again, I understand, Your Honor's perhaps practical sense that that feels unwieldy, but I think there are countervailing practical reasons why this particular procedure is — is not great. For starters, you only have 14 days to correct the sentence, and that's not just file the motion. You have to — you have to actually rush to correct it within 14 days. And so that — you really aren't getting the full sort of considered pause of having an actual resentencing hearing. Additionally, you lose the opportunity potentially to ask for reassignments and things like that. So I mean, of course, you can ask it to the district judge, but I — my experience is they typically rarely — rarely do that. So I'd like to try to reserve the balance of my time, if I may. Good morning, Your Honor, and may it please the Court. Ross Mazur on behalf of the United States. The defendant tried to kidnap the Speaker of the House, and failing that, willfully assaulted her husband. The evidence plainly showed that he acted on account of the Speaker's performance of official duties, and the jury was given the model instruction that tracked the statutory language. This Court should affirm. Let me briefly touch on this sufficiency to contextualize the other errors that defense counsel just focused on. The defendant's own words and actions show that he acted on account of the Speaker's performance of official duties. Just after the assault, a paramedic saw blood on his clothing and asked what happened to try to treat minor injuries. His first words were that he was there to confront the Speaker about the lies coming out of Washington, D.C. In his later interview, he explained his plan was to kidnap the Speaker to break her kneecaps so that whenever she was wheeled onto the House floor, other members of Congress would see it and understand that there were consequences for what the defendant perceived as their lies and corruption in public office. And on the day the body camera footage was released to the public, which showed the assault, the defendant called a TV reporter and said he had a message for the American people, you're welcome, and even apologized to the American people for not getting more of them, showing that he believed the assault on Mr. Pelosi had gotten the Speaker as a way of getting them because he testified that Mr. Pelosi wasn't on his list. And so that could only refer to the Speaker. From this evidence alone, a rational juror could have found that the defendant acted on account of the Speaker's performance of official duties. Okay, what about the instructional error part of that? So let me first clarify the instructional issues that are actually before the court. First, the defense renews a narrow claim that the court should have substituted because of for on account of. And second, the defendant suggests that even if the court didn't use because of, it had some obligation to sua sponte define the term on account of the performance of official duties in some unspecified way. So on the narrow claim, the defense argument collapses on its own terms. If, as I think Judge Bumate alluded to, if because of and on account of are synonymous, then the district court could not have abused its discretion in choosing one over another, let alone the term actually used in the statute. And if because of is narrower than on account of, as the defense argued below and as their argument on appeal necessarily implies, or they wouldn't be pushing for this change, then the district court might have actually erred in choosing the because of framing because Congress chose on account of, which the defendant seems to acknowledge allows for a more permissive causal standard. But what is the causal, Mr. Mazur, what is the causal standard that, as you understand, on account of and what limited principles are there? So this court's case law establishes that the performance of official duties element is met if the defendant targets the victim because of her official position in government. Is that a but-for standard? No, it's not a but-for standard. In cases like United States v. Rosenau, this court distinguishes causation statutes from motive statutes. And for motive statutes like this one, it says that but-for causation doesn't apply, that barrage is distinguishable, and that the appropriate language is motivating factor. So how much of a motivating factor? I think there's some discussion. There's nothing that suggests it would be primary, substantial, significant. Well, I think the first point is that the evidence would have satisfied any causation standard because even if it were but-for, the defendant said he chose the speaker to target because he viewed her as leader of the plaque in Washington, D.C., lying to the American public. So whatever the standard happens to be, the evidence would meet it in this case. I think if the court wanted to offer some additional guidance on what the causal standard is, in many cases, on account of doesn't need additional explanation, courts use causal phrases or nexus requirements like in relation to without providing further definition. The court could say, I think, that on account of that mixed motives are okay, that they're not precluded by the statute, that on account of, sorry, excuse me, that primary or sole motivation is not required, but that the motive can't be trivial or incidental. These are the principles drawn from the on-account-of line of case law and from all of the other cases interpreting motive-type statutes. But because of, as you discussed, with respect to sufficiency, you're not suggesting that this would be a good case that gets us close to that line where we'd need to draw any line between whether it was the primary, secondary, not trivial? Yes, Your Honor. The evidence in this case was overwhelming regardless of the causal standard. But based on this Court's precedent, but for is not appropriate when the statute deals with motive and not causation. In other words, the link between the harm in this case, the harm being the harm to Federal functions or Federal officials and their families, is connected to the conduct, the assault or the kidnapping through the defendant's motive. It's not a results-from kind of test, as in Barrage, where the question was whether death or serious bodily injury results from conduct or in the context of the Hate Crimes Prevention Act cases that the defense has cited, where it's the same thing. The question is whether serious bodily injury results from the defendant's conduct. So what about the argument just made this morning that the district were also neglected to put official duties as a member of Congress? Well, the jury instruction defines, excuse me, the jury instruction said that the government had to prove that the defendant intended to, on 1201, kidnap a Federal officer, and then it defined Federal officer. So I don't think there was any ambiguity in the instructions on either count what official duties the Court was talking about. And that brings me back to the broader claim that the defense I think is raising, the broader instructional claim that I think they're raising on appeal, which is that even if the Court didn't replace on account of with because of, it should have offered some additional definition of the challenged element performance of official duties. Well, Mr. Mazur, I want to come back to your framing of this as a motive requirement. I can see where that lands in the 115 charge with intent to. Where would we find it in the 1201 kidnapping charge? The motive requirement I was referring to is the on account of language, because on account of refers to the defendant's reasons for acting. He was motivated by the performance of official duties. Okay. So those words always carry with it a motive requirement? Yes, Judge Johnstone. The difference between 1201A5 and 115 is that 115 adds a specific intent requirement. When it comes to family members, immediate family members of public officers, there the defendant also must intend either to retaliate on account of the officer's performance of official duties or to impede, intimidate, or interfere with the federal officer while engaged in the performance of official duties. And here both of those prongs were met. Either one would be sufficient. Let me just make sure that I understand what the rejection of the but-for cause reading of this entails. Let's assume a defendant is watching C-SPAN and sees a senator presiding and he's wearing a really nice watch. And the defendant then mugs the senator because they saw him wearing this very nice watch. The, in that case, right, you'd see that the argument is that that is the fact that the senator was on C-SPAN performing official duties is the but-for cause of the defendant identifying the victim. But you'd say that would be outside of the, that is not on account of, even though it might be but-for? I don't think but-for is the correct causal standard for interpreting the phrase on account of. Right, so the statute would not apply to that defendant if it were merely the but-for. That's how the defendant identified the person because they saw them identifying the official duties, but that wasn't a motivating factor? So with respect to this or similar hypos, I think the most important point is that on account of the performance of official duties is a jury question. And so the question for this court is whether the evidence was so weak that it failed to satisfy that element as a matter of law. Now in the hypothetical that you just gave, if the, truly the defendant only saw, happened to see the senator on TV and he would have tried to rob anyone he saw on TV with a nice watch, then I think that would be a very difficult case to prove, but ultimately it would be a question of sufficiency of the evidence. What if he targeted her because she was the leader of the DNC? Well, I think that the challenge here is that the defendant never drew distinctions between her role in Congress and her role as leader of the DNC. He referred to her as leader of the Democratic Party in Congress, and he even made specific references, not just to, you know, general corruption that he perceived in Washington, D.C., but also to specific congressional acts. And so the evidence in this case would satisfy any definition of official duties. These included the certification of the 2020 election results. These included the first impeachment of President Trump and the investigation into Russian interference in the presidential election. So in the rebuttal when the prosecutor said that defense has made up, that distinction is made up, you, I take it you're, that wasn't making a legal point. That was just a factual point of what the evidence showed the defendant's state of mind was. Is that the right way to say it, think about it? Absolutely, Judge Bumate. And I think that, you know, one of the sentences that defense counsel omitted on 6 ER 1358, the prosecutor said, this is a made up distinction. The defendant made no such distinction. So the first point is that the prosecutor was talking about the defendant's intent and he himself did not distinguish between this political and official duty motivations. The second thing is that, like I said, this is a jury question. And defense counsel in summation was trying to present these distinctions as matters of  What the government was reminding the jurors was that this is a question for you. You have to decide whether the statute is met. Counsel, can I now direct you? You're running low on time. And I do want you to address the 403 argument as well as the elocution argument. So if you can start with the 403. Of course, Your Honor. So there was no abuse of discretion in not excluding very limited evidence under Rule 403. Both the district court and the government took an extremely conservative approach in the evidence. They were admitted in two short body camera clips and a small number of images. And even on appeal, it's not clear to me exactly which material the defendant is challenging because they seem to concede that at least some evidence showing the extent of the assault should have been admissible. So the evidence was probative for at least three reasons, which we outline in our brief. The first is that it tended to prove both intent and motive under Count 2, 115A1A. A theme of the defense was to try and minimize the severity of the force and the injuries to show that the attack was one performed out of frustration and not retaliation. And the simple fact is that three targeted blows look more deliberate than one swing of the hammer. It was relevant to prove motive and intent. The second reason is that it was relevant to prove the sentencing enhancement. A hammer is not invariably a deadly weapon. It's only a deadly weapon if it's used in a way to cause death or serious bodily injury. And so the evidence was probative of that as well. And lastly, it tended to prove the substantial step element of the attempted kidnapping charge in 1201. It's true, as defense counsel pointed out, there were other substantial steps. But at trial, the defense highlighted that the interaction, at least on their view, between the defendant and Mr. Pelosi remained cordial, they said, until the end. And so in order to show that the defendant clearly would have gone forward with his kidnapping, but for some intervening event, like her not being there, the best evidence of the substantial step was the violent nature of the assault. And the defense, I think, has also suggested that the district court didn't apply the correct balancing test. But if you look at the pretrial conference, where the court addressed this motion in limine, it's just not true. And this is at 1 ER 146 to 64. The court considered the motion in limine, walked through every single piece of evidence, and where they were duplicative, the court pressed the government to withdraw those pieces, which they did. But the district court and the government took an extremely conservative approach to any evidence that was emotionally charged. Could you address the, I guess, as you start, the 35A argument, the Eustim generis question, right? How is clear error, if we don't think of this as a technical error, how is clear error like the other two errors described in the rule? So to affirm the sentencing proceeding in this case, the court only has to do two things. One, state that the failure to invite allocution is an other clear error, which should be undisputed, I think. It violates Rule 32. And second, that that doesn't change just because the remedy involves rebalancing the 3553A factors. So Rule 35A, the text of the rule, doesn't limit the type of remedy. It only refers to the type of error, arithmetic, technical, or other clear error. And I think, as Judge Bumate alluded to, on the defense reading, it would be difficult to correct clear errors that even the defense in their briefing concedes are clear errors that should be corrected under Rule 35. And they concede that because the Third Circuit said that they were clear errors in the MM case, things like imposing a sentence below the mandatory minimum, or failing to impose a mandatory prison term, you can't correct those things unless you do a rebalancing of the 3553A factors. Their position is also inconsistent with the Fifth Circuit's decision in Delgado and with the multiple circuits holding that Rule 35 does allow for plenary resentencing. I think the one case they rely on is the Supreme Court's decision in Dillon. But Dillon construed 3582C2, which allows a court to reduce a term when a guidelines range has been retroactively lowered, but only consistent with the applicable policy statement from the Sentencing Commission. And the policy statement is USSG 1B1.1. Can I ask a question? The government's not arguing that it's a technical error. Why not? Why is it not a technical error? Your Honor, the government thought it fit more neatly into other clear error. But I think you're right that it could also fit in the technical error category. Yeah, I think both of those work. And it's worth noting there are three limiting principles here to... And I would just follow. Even if it's not strictly a technical error, under the USS canon, it would clearly then fit into other clear error because it's close enough to a technical error. Yes. Have we ever, I mean, as the denial of... I mean, you kind of think the denial of the allocution here is a pretty fundamental error. So technical, at least that connotes one meaning of more like a math error, could be obviously very important to the parties. But we have arithmetic, technical, and then other clear error. So how do we cabin that other clear error if it's not like technical or arithmetic? So other clear errors is a broader term. It sweeps more broadly. But Rule 35 has some very specific limiting principles so that the kind of errors don't get out of hand. The first is timing. The error has to be identified and the resentencing proceeding occur within 14 days. That's a very limited time period. The second are the nature of the error. Clear error can't involve interpretation or judgment to identify the error. Per the committee notes, the advisory committee notes, it must be apparent on the face of the transcript. So if we're talking about something like, you know, there's a difference between a failure to consider something at all and a failure to consider it sufficiently. And if the court is, you know, if the parties can argue about, you know, whether the court's remarks implicitly rejected an argument or whether the defendant presented an argument that was serious enough to warrant, you know, a specific decision, then it's not other clear error. And the final thing is that under the committee notes, the error almost, if uncorrected, would almost certainly result in a remand on appeal, which seems to exclude any kind of error where there are viable, harmless error arguments that are best hashed out during the appellate process. But a complete failure to allocute is quintessentially what Rule 35 is there to correct. Having it go through the appellate process would just waste resources and end up doing the same thing. The last thing I was going to mention is that Dillon is distinguishable because 3582C2 just doesn't apply to 3582C1B, which doesn't incorporate USSG 1B1.1, which tells courts to substitute the amended range and to leave all other guideline application decisions unaffected. That doesn't apply in Rule 35. Unless the court has further questions, the government would ask that you affirm the conviction and sentence. Thank you, counsel. A few quick points, roughly, in the order that Mr. Mazur raised them. First, on the causation standard, he points to this court's Rosenau decision and suggests that we never apply but for causation when the element is sort of a mens rea, a mental state. I point the court to the Sixth Circuit decision Miller. It's a hate crimes case cited in my brief. And there, it's clearly all about whether or not it's but for his motivation based off of, I believe, religion in that case that the offense would have happened. So I think that the distinction the government is suggesting doesn't hold fast in every situation. I also want to, as the instructional error point, make a note about the standard review. Mr. Mazur suggested that the standard review is abuse of discretion. That's not the case here. It's a three-part standard review when it's a theory of defense instruction. And the two that are really, the only one that's in dispute, which is whether or not other instructions adequately cover the defense theory, is review of de novo. That's Mason. So this is not just an argument about whether or not a precise formulation is sufficient. That is abuse of discretion. But because it's in the theory of defense context, it is de novo. And on that point, the assault instruction does define a U.S. official as president, vice president, member of Congress, member-elect. So why doesn't that cover it? Right. At least the second part of your error, because you said it because of her, you know, official duties because she's a member of Congress. Right. So it defines what federal official is, but it doesn't define what official duties is. Now, I— But you wanted to add to her official duties as a member of Congress. That's right. And I wanted a separate instruction specifically so we could point to that instruction as bolstering the defense theory. Because, you know, the government is suggesting that the portion of the rebuttal argument that I read was just commentary on evidence. But I don't— It goes far beyond commentary on evidence, Your Honor, when the prosecutor is specifically citing to the lack of a jury instruction. I think that's the critical point. When, you know, we don't even have an instruction we can hang our hat on, it just muddies the waters. I acknowledge that it's not wildly different, the two formulations. But again, in Mason, this Court in that case, and it cited other cases there as well, where, yes, if you, you know, kind of carefully analyze and parse with our, you know, lawyer brains, you might be able to piece together the defense theory. But the point in Mason was that you need to look at it from the perspective of a reasonable juror. And here, a reasonable juror, you know, the last thing they hear is, look at the  It's not there. This is a fake defense. And that's really critical, Your Honor. That's when we can't have anything that we can point to in the evidence, and the government can exploit that by preventing us from doing it, from getting that instruction, it fatally undermined the theory of the defense here. And we argue that that would require reversal.  Thank you, counsel. This case is submitted. And we are adjourned for this week.
judges: BUMATAY, JOHNSTONE, ALBA